# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Berl McKinnie, | |
| Plaintiff, | Case No. 14 C 9588 |
| v. | |
| Thomas Dart and Cook County, Illinois, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This action arises from the allegedly inadequate housing accommodations provided to Plaintiff Berl McKinnie, a disabled detainee housed at Cook County Jail from November 4, 2012 to April 18, 2013. Plaintiff brings claims under the Fourteenth Amendment, Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act against Defendants Sheriff Thomas Dart, in both his individual and official capacities, and Cook County, Illinois ("Cook County"). Defendants now move [49] for summary judgment. The motion is granted in part and denied in part.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Facts[1]

Plaintiff Berl McKinnie, who has had a prosthetic right leg since 1993, was a pre-trial detainee housed at Cook County Jail from November 4, 2012 to April 18, 2013. DSOF ¶ 10; PSOAF ¶¶ 1, 3. Upon arrival, Plaintiff told the intake officer that he had a prosthesis, which was recorded on Plaintiff's intake form, and that he found it challenging to walk long distances. PSOAF ¶¶ 6, 8. Plaintiff also requested a handicap accessible housing assignment. PSOAF ¶ 7. That did not happen. From November 5 to 15, 2012, Plaintiff instead was assigned to Division 5, which was not handicap accessible. DSOF ¶ 21; PSOAF ¶¶ 1-2. Then, on November 15, 2012, Plaintiff was transferred to Division 2, Dorm 2, Living Unit V, which also was not handicap accessible, and he stayed there until his release on April 18, 2013. DSOF ¶ 26; PSOAF ¶¶ 2-3. Plaintiff was assigned to a cell on the

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to Defendants' statement of undisputed facts [50], with Plaintiff's responses [55]. "PSOAF" refers to Plaintiff's statement of additional facts [55], with Defendants' responses [58].

2

third floor. DSOF ¶ 25. In Division 2, Dorm 2, only Living Units M and N were handicap accessible. PSOAF ¶ 4.

Plaintiff testified about the challenges he faced residing in Living Unit V:

- Plaintiff was unable to shower and only could wash his upper body in the sink. DSOF ¶¶ 38, 40; 7/18/13 McKinnie Dep. at 48-49. The showers in Living Unit V lacked "grab bars," and Plaintiff feared slipping on the wet shower floor. DSOF ¶ 39. Plaintiff also was unable to stand for the duration of a shower. DSOF ¶ 39.

- Medications were dispensed on the second floor and dinner on the first floor, so Plaintiff had to traverse multiple flights of stairs daily. DSOF ¶¶ 34-36, 53. Plaintiff testified that, as a result of having to walk up and down the stairs, his skin peeled off where his amputated right leg met his prosthetic limb. DSOF ¶ 65.

- Only with the assistance of others, Plaintiff was able to use the toilets in Living Unit V. DSOF ¶ 44. Plaintiff testified that the toilets lacked handrails and were too low to the floor for Plaintiff to use without assistance. DSOF ¶ 44; PSOAF ¶ 19.

Plaintiff, at certain unidentified times, asked prison officials to move him to a handicap accessible living unit and provide him with a shower chair. DSOF ¶¶ 41-42; PSOAF ¶ 12. His requests were unsuccessful. DSOF ¶¶ 41-42. Plaintiff finally obtained some success in February 2013, when he again asked for a shower chair, this time during a medical appointment, and received a chair two or three days later. DSOF ¶¶ 62-63.

While Plaintiff was incarcerated, between November 4, 2012 and April 18, 2013, there was no written policy for a disabled detainee such as Plaintiff to request a transfer to a handicap accessible living unit. PSOAF ¶ 11. When asked how a disabled detainee could have requested a relocation to a handicap accessible living unit during that time, Superintendent Salomon Martinez testified, at his deposition

3

while acting as the Sheriff of Cook County's Rule 30(b)(6) corporate representative, that the detainee should have told a correctional officer: "I'm having a problem moving." Martinez Dep. at 14, quoted at PSOAF ¶ 11. The correctional officer then, according to Superintendent Martinez, would have relayed the message to his Lieutenant or Commander, and the detainee would have been moved. PSOAF ¶ 11. More than one year after Plaintiff left Cook County Jail, Sheriff Dart issued a General Order, effective August 14, 2014, for housing and accommodating disabled detainees, including ones with mobility impairments. General Order 24.14.8.0 [50-10] §§ VIII(C) and (F), cited at DSOF ¶ 76 and PSOAF ¶ 28.

### III. Analysis

#### A. Fourteenth Amendment Claim

Through 42 U.S.C. § 1983, Plaintiff first alleges that Sheriff Dart, in both his individual and official capacities, violated the Fourteenth Amendment by not accommodating Plaintiff's disability. This Court considers each claim in turn, and concludes that Plaintiff may proceed to trial with his official capacity claim only.

##### 1. Individual Capacity

To prove a claim for denial of medical care, Plaintiff must show: (1) that he had an objectively serious medical condition; (2) that Sheriff Dart knew of the condition and was deliberately indifferent to treating Plaintiff; and (3) that this indifference caused Plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Under the second prong, which is all that is at issue here, Sheriff Dart must have had subjective knowledge of the risk to the detainee's health, and he also

must have disregarded that risk. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Evidence that the official acted negligently is insufficient to prove deliberate indifference. *Hicks v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998). Rather, "deliberate indifference" is simply a synonym for "intentional or reckless conduct," and "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). Even without direct participation, a supervisor may be liable if he knew about the constitutional deprivation and facilitated, approved, condoned or turned a blind eye to that conduct. *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1998); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Circumstantial evidence is appropriate proof of deliberate indifference. *Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir. 2005).

Instructive is the Seventh Circuit's decision in *Luck v. Rovenstine*, 168 F.3d 323, 325, 327-28 (7th Cir. 1999), where the detainee did not prevail on summary judgment under circumstances more compelling than here. Plaintiff William Luck was arrested by an Indiana state trooper acting without a warrant; turned over to the custody of the Kosciusko County, Indiana, Sheriff, Al Rovenstine; and jailed for more than one week at the Kosciusko County Jail without receiving a probable cause hearing. *Id.* at 324-25. Probable cause hearings typically are conducted within 48 hours of arrest. *Id.* at 324. Luck, alleging Fourth Amendment and due process violations through Section 1983, sued Sheriff Rovenstine in his individual and official capacities. *Id.* at 325.

Upon moving for summary judgment, Sheriff Rovenstine defeated the claim against him in his individual capacity (but not his official capacity, as discussed below) by showing that he lacked the kind of personal involvement required for individual liability to attach in Section 1983 cases. *Id.* at 327-28. To show personal involvement, Luck argued liability against Sheriff Rovenstine because: (1) he would have known about Luck's detention through the jail roster; (2) he monitored when detainees had their probable cause hearings if they were arrested by his own officers, but he had a policy of ignoring pretrial detainees brought into Kosciusko County by outside agencies (such as Indiana State Troopers), to avoid "turf wars"; and (3) he declined to act in the face of prolonged detentions. *Id.* 325, 327. Sheriff Rovenstine, at his deposition, admitted that he did not monitor the hearing schedule for detainees brought in by outside agencies and further admitted that, while he was unaware of Luck's specific situation, it was not unusual for detainees brought in by outside agencies not to receive timely hearings. *Id.* at 325. This evidence, which is more compelling than here, still was not enough for Luck to survive summary judgment. The Seventh Circuit, citing its deliberate indifference decision in *Gentry*, 65 F.3d at 561, found that the evidence against Sheriff Rovenstine, even when taken as true at the summary judgment stage, did not rise to the level of personal involvement required in Section 1983 cases. *Luck*, 168 F.3d at 327. This case mirrors *Luck*, so the Seventh Circuit's decision controls and shows that Plaintiff can fare no better against Sheriff Dart.

As in *Luck*, here, Plaintiff relies on Sheriff Dart's general knowledge of the obstacles faced by disabled detainees at Cook County Jail in an effort to establish his personal involvement. Plaintiff relies most heavily on the settlement reached in an earlier class action lawsuit brought in this District and captioned *Phipps v. Sheriff of Cook County*, Case No. 07-3889. In *Phipps*, the Sheriff of Cook County settled claims that prison officials were not providing reasonable housing accommodations to wheelchair bound inmates. PSOAF ¶¶ 23-24. While those obstacles may have been the product of Sheriff Dart's own policies at Cook County Jail, *Luck* shows that whatever knowledge Sheriff Dart may have acquired from the *Phipps* settlement, without more, fails to create the kind of personal involvement by Sheriff Dart that is required for Plaintiff to proceed to trial against him. Like Sheriff Rovenstine in *Luck*, there is no evidence here that Sheriff Dart was aware of Plaintiff's specific situation even though he might have known generally that disabled detainees at Cook County Jail were not receiving adequate housing accommodations. Plaintiff admitted at his deposition that he never wrote to Sheriff Dart, let alone about his allegedly inadequate housing accommodations. DSOF ¶ 58.

One final point bears noting. Analogous cases cite the Seventh Circuit's decision in *Gentry* when allowing the claim against Sheriff Dart in his individual capacity to proceed at the more lenient motion to dismiss stage. These cases cite *Gentry* for the proposition that Sheriff Dart's knowledge that disabled detainees were not receiving adequate housing assignments, combined with his failure to

rectify that problem, are sufficient to establish individual liability. *E.g.*, *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1162 (N.D. Ill. 2014); *Crockwell v. Dart*, No. 13-4880, 2013 WL 6796788, at *4 (N.D. Ill. Dec. 23, 2013); *Lawrence v. Dart*, No. 13-2053, 2013 WL 3672090, at *3 (N.D. Ill. July 12, 2013); *Whisby v. Dart*, 12-8637 (N.D. Ill. Feb. 14, 2013). *Gentry*, however, does not save Plaintiff's claim at the more demanding summary judgment stage.

In *Gentry*, 65 F.3d at 557, 561, the Seventh Circuit reversed the district court's grant of summary judgment and allowed Kenneth Gentry, the incarcerated plaintiff, to proceed with his claim that the prison superintendent was individually liable for ordering that inmates be denied scribe materials, even though the superintendent's order was not directed at Gentry specifically. Had that been the sole basis of establishing personal involvement in *Gentry*, then denial of summary judgment might have been warranted here. But it was not the sole basis in *Gentry*; nor can that be the takeaway after the Seventh Circuit's subsequent decision in *Luck*, which cited *Gentry*. Unlike here, the inmate in *Gentry* also sent "many letters" to the superintendent, which the Seventh Circuit found created a triable issue of fact as to personal involvement. *Gentry*, 65 F.3d at 561. Even with those letters, the Seventh Circuit characterized its decision to reverse summary judgment as "close." *Gentry*, 65 F.3d at 561. Today's decision is not.

For these reasons, Plaintiff's claim against Sheriff Dart in his individual capacity is denied. Having found that Sheriff Dart lacked personal involvement, this Court need not address whether he also is entitled to qualified immunity.

8

### 2. Official Capacity

A suit against Sheriff Dart in his official capacity is treated as one against the government entity itself, here, the Sheriff of Cook County. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). To prevail on his official capacity claim, Plaintiff must show that he suffered a constitutional injury, and that injury was caused by: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policy-making authority. *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978). Under the third prong, Sheriff Dart had final policy-making authority at Cook County Jail. 730 ILCS 125/2; *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975-76 (7th Cir. 2000). If the Sheriff of Cook County is faced with actual or constructive knowledge that its agents probably will violate constitutional rights, then it may not adopt a policy of inaction. *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012).

Here, Plaintiff argues that the Sheriff of Cook County adopted an unconstitutional policy of inaction: it knew that correctional officers had not been providing reasonable housing accommodations to disabled detainees yet failed to react until August 2014. PSOAF ¶¶ 28-29. To show the Sheriff of Cook County's knowledge, Plaintiff relies on: (1) the *Phipps* litigation, where Sheriff Dart learned, no later than the 2010 class action settlement, that disabled detainees had not been receiving adequate housing assignments; and (2) the subsequent implementation of

9

General Order 24.14.8.0 for housing and accommodating disabled detainees. PSOAF ¶¶ 23-24, 28. Contrary to Defendants' argument, therefore, the *Phipps* settlement shows that Plaintiff is not relying only on a single incident of alleged wrongdoing.

Plaintiff's evidence is sufficient to create a triable issue of fact. In *King*, 680 F.3d at 1020-21, the Seventh Circuit reversed the district court's grant of summary judgment for La Crosse County on the inmate's *Monell* claim. The Court explained that there was a triable issue of fact as to whether La Crosse County had sufficient notice (namely, through newspaper articles and evidence of internal discussions at the County) of the fact that the physician and medication policies in effect at the county jail had resulted in deficient medical care. *Id.* at 1021. The information La Crosse County learned from newspaper reports of detainees not receiving proper medication is akin to the knowledge the Sheriff of Cook County purportedly learned from a class action lawsuit raising issues of deficient care and the subsequent settlement.

Likewise, *Luck* again guides this Court's decision. While denying Luck's (the detainee) claim against Sheriff Rovenstine in his individual capacity for lack of personal involvement, the Seventh Circuit still allowed Luck to proceed with his claim against Sheriff Rovenstine in his official capacity. *Luck*, 168 F.3d at 325-27. Through Sheriff Rovenstine (who like Sheriff Dart had final policy-making authority), Kosciusko County had given greater weight to avoiding conflict with other agencies, than it did to the preservation of detainees' constitutional rights.

*Id.* at 326-27. Also similar to here, there was no dispute in *Luck* that the county knew constitutional violations were occurring. Sheriff Rovenstine testified that it was not unusual for detainees brought in by other agencies not to receive timely hearings. *Id.* at 325. This case thus tracks *King* and *Luck*, and summary judgment is not warranted.

Defendants also argue that any unconstitutional policy did not injure Plaintiff because, for example, he was able to maintain his hygiene despite being unable to shower. The Seventh Circuit has held that limiting inmates to weekly showers does not state a constitutional injury, *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 670-71 (7th Cir. 2012), but, based on the present record, Plaintiff may not have been able to wash his lower body even that often while housed in Division 2. DSOF ¶¶ 39-40; PSOAF ¶ 18; 7/18/13 McKinnie Dep. at 48-49. The Court in *Hernandez v. Dart*, No. 14-1236, 2014 WL 3511516, at *3-4 (N.D. Ill. July 16, 2014), moreover, surveyed the case law in this District and concluded that disabled detainees sufficiently pled an injury where the complaint showed that they could not shower, for example, or were otherwise injured or exposed to such a risk because Cook County Jail did not accommodate their disabilities. There is another actionable injury here as well. Plaintiff testified that he suffered skin irritation caused by his prosthesis rubbing against his leg when he walked up and down stairs at Cook County Jail. PSOAF ¶¶ 13-14. Defendants question Plaintiff's credibility, *see* DSOF ¶¶ 12-14, 17, but this is not the kind of issue that is amenable to resolution at the summary judgment stage.

For these reasons, Plaintiff may proceed with his Fourteenth Amendment claim against Sherriff Dart in his official capacity.

## B. ADA and Rehabilitation Act Claims

This Court turns next to Plaintiff's statutory claims under Title II of the ADA and the Rehabilitation Act for failure to accommodate his disability. The relief available to Plaintiff under both statutes is coextensive. *Jaros*, 684 F.3d at 671 (comparing 29 U.S.C. § 794A with 42 U.S.C. § 12117). Thus, with respect to this lawsuit, the analysis governing each statute is the same, except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states, including Illinois, accept for their prisons. *Jaros*, 684 F.3d at 671-72; *see also* PSOAF ¶ 22 (undisputed that the Sheriff of Cook County received federal funds in 2010, 2011 and 2012).

To state a claim under the ADA and the Rehabilitation Act, Plaintiff must show: (1) he is a qualified person (2) with a disability and (3) Defendants denied him access to a program or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Jaros*, 684 F.3d at 672. Refusing to make reasonable accommodations that a disabled individual requires to access a program or activity is tantamount to denial under the third element. *Jaros*, 684 F.3d at 672. The first two elements are not in dispute, so this Court addresses the third element only and separates its analysis, as the parties did, into two parts—whether Defendants denied Plaintiff access to a program or activity (Subsection 1) because of his disability (Subsection 2).

1. **Denial of Access to Programs and Activities**

Access to certain housing facilities, including showers, toilets and sinks in a prison setting, are among the programs and activities protected by Title II of the ADA and the Rehabilitation Act. *Jaros*, 684 F.3d at 672; *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2010); *see generally Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998). But the public entity (here, the Sheriff of Cook County) must have knowledge of the individual's disability and the individual's need for an accommodation before it can be required under the ADA and the Rehabilitation Act to provide any reasonable accommodations. *Robertson v. Las Animas County Sheriff's Department*, 500 F.3d 1185, 1196-98 (10th Cir. 2007); *Kiman v. New Hampshire Department of Corrections*, 451 F.3d 274, 283 (1st Cir. 2006). That knowledge either can derive from the individual's request for an accommodation or, in other cases, will be imputed onto the public entity because the individual's need for an accommodation is "obvious." *Robertson*, 500 F.3d at 1196-98; *Kiman*, 451 F.3d at 283. Both cases have been credited in this District. *Phipps*, 681 F. Supp. 2d at 926-27.

Defendants argue that they lacked knowledge that Plaintiff required, but was not receiving, accommodations because Plaintiff never made a formal request for a shower chair or other housing accommodations. Defendants argue that when Plaintiff did request a shower chair at a medical appointment in February 2013 (and setting aside whether this was in fact a formal request), he received one within

three days of his request. DSOF ¶¶ 62-63. This argument fails at summary judgment for two independent reasons.

First, Plaintiff testified at his deposition that he made earlier requests (the exact dates of which are not in the record) for a shower chair that were denied. DSOF ¶ 42; PSOAF ¶ 12; 5/15/15 McKinnie Dep. at 33. Those requests were not made through the formal request procedures at Cook County Jail, but a formal request was not required, contrary to Defendants' argument. In *Kiman*, 451 F.3d at 289, the district court granted summary judgment, emphasizing that the inmate never made a formal request, such as through an inmate request slip or a grievance, to be moved to a lower tier and have his bottom bunk pass honored. The First Circuit, however, reversed, finding that the inmate's unheeded requests to correctional officers nonetheless created a triable issue of fact as to the ADA claim. *Id.* at 289-90. The same is true here.

Second, even if Plaintiff had not made these requests, there nonetheless would be a triable issue of fact as to whether Plaintiff's need for housing accommodations was "obvious." *Robertson*, 500 F.3d at 1196-98; *Kiman*, 451 F.3d at 283. On November 4, 2012, Plaintiff told the booking officer that he had a prosthetic leg, and the booking officer noted that in the intake form. PSOAF ¶ 8. That may be enough. Superintendent Martinez testified, when deposed as the Sheriff of Cook County's corporate representative, that it was not permissible to assign a detainee who required a medical device to walk to non-accessible living units in Division 2:

> Q. Is it permissible for the defendants to house or assign an inmate who requires a medical device to walk to another Division II tier other than M or N.
>
> A. To my knowledge, no.

Martinez Dep. at 11; *see also* PSOAF ¶ 10. If a prosthetic leg were not an obvious enough sign that housing accommodations were required, and Superintendent Martinez's testimony shows that it may have been, Plaintiff testified that he also expressly requested a handicap accessible housing placement both during intake and after being assigned to Living Unit V in Division 2. DSOF ¶ 41; PSOAF ¶¶ 7-8.

These facts make this case analogous to *Robertson*, 500 F.3d at 1196-98, where a triable issue of fact existed as to whether the deaf detainee's need for hearing accommodations, such as a teletype ("TTY") machine, were obvious. Even though the detainee never expressly requested hearing assistance, the booking officer knew the detainee was deaf, and, as with mobility limitations, the Tenth Circuit found that a reasonable jury could conclude that the county jail's knowledge that the detainee required communication accommodations flowed from knowledge of his deafness. *Id.* at 1198.

### 2. Intentional Discrimination

The Seventh Circuit has not yet addressed what needs to be proven to show "intentional discrimination," as required under the third part of the ADA and Rehabilitation Act test, and other Circuits are split. *CTL*, 743 F.3d at 528 n.4. The majority approach, which has been applied by at least one other Court in this District, *e.g.*, *Phipps*, 681 F. Supp. 2d at 918, is to apply a deliberate indifference standard. Deliberate indifference does not require personal animosity or ill will but

rather may be inferred when there is knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Phipps*, 681 F. Supp. 2d at 918; *Love v. Westville Correctional Center*, 103 F.3d 558, 561 (7th Cir. 1996). Both parties apply the deliberate indifference standard here, so this Court will as well.

*Phipps* also involved disabled detainees with ADA and Rehabilitation Act claims against the Sheriff of Cook County and Cook County, and is instructive on the application of the deliberate indifference standard here. On these claims, the Court in *Phipps* found a triable issue of fact that warranted a trial. 681 F. Supp. 2d at 916-20. Defendants had provided shower chairs and other bathroom accommodations, but refused requests by the disabled detainees for further accommodations, such as "grab bars" in the shower and accessible sinks. *Id.* at 918-19. The Court, relying on the Seventh Circuit's decision in *Love*, held that if the requested modifications were reasonable, then a reasonable jury could find that the Sheriff of Cook County and Cook County acted with deliberate indifference despite having provided other accommodations that they viewed as sufficient. *Phipps*, 681 F. Supp. 2d at 920.

In *Love*, Cleo Love was a quadriplegic incarcerated in Westville Correctional Center. 103 F.3d at 558. Love claimed that the prison had violated the ADA by failing to provide him with access to various programs and activities. *Id.* at 558-59. A jury concluded that, while Westville Correctional Center had violated Love's rights, the violation had not been intentional. *Id.* at 559. Love successfully moved

for a new trial. In granting the motion, the district court explained that discrimination is intentional when the prison denies an inmate greater access to programs, knowing that the inmate's disability is the reason that he is not receiving full access to those programs:

> WCC knew that it was not providing Mr. Love full access to services, programs, and activities, knew that Mr. Love's disability was the reason he was not receiving full access to those programs, knew that Mr. Love repeatedly requested access, knew that WCC had a legal duty to provide Mr. Love with reasonable access, and knew that Mr. Love had a right to reasonable access. WCC may not have known that the access they were affording Mr. Love was unreasonable, but … WCC voluntarily and deliberately denied Mr. Love's requests for greater access to the programs, and did so because of this known disability, not because of mistake, accident, negligence, or another innocent reason. Mr. Love was not required to prove anything more to establish that the discrimination (a separate issue) was intentional.

*Love v. McBride*, 896 F. Supp. 808, 810 (N.D. Ind. 1995).

Westville Correctional Center appealed, arguing that it had not intentionally discriminated against Love. The Seventh Circuit rejected the argument, holding that the "record at the first trial amply supports the trial judge's conclusion on the motion for new trial that Westville indeed committed 'intentional' discrimination against Love. Its specific knowledge of the ADA's reasonable accommodation requirement is legally irrelevant to this finding." *Love*, 103 F.3d at 560.

As a final example, in *Kennington v. Carter*, No. 02-648, 2004 WL 2137652, at *8 (S.D. Ind. June 28, 2004) (Tinder, J.), the Court found a triable issue of fact on the issue of deliberate indifference. As here, prison officials learned during intake that the detainee was deaf, yet they failed to accommodate him by providing a TTY

machine to make phone calls at any time during his incarceration, despite the detainee having made several requests. *Id.* at *7-8.

These cases show that there is a triable issue of fact as to intentional discrimination here. Plaintiff made several requests for housing accommodations that all were denied. During booking, Plaintiff requested that he be placed in a handicap accessible living unit. PSOAF ¶ 7. Plaintiff was not assigned to an accessible living unit, so he requested a reassignment, including by asking the jail superintendent. DSOF ¶ 41. Those requests were unsuccessful. DSOF ¶ 41. Plaintiff also made several requests up the prison hierarchy for a shower chair, but those requests too were denied, with the explanation for the denial being: "somebody might get hurt." DSOF ¶ 42; PSOAF ¶ 12; 5/15/15 McKinnie Dep. at 33. As in *Love* and *Kennington*, these unsuccessful requests are sufficient to create a triable issue of fact on the issue of intentional discrimination.

Defendants construe "somebody might get hurt" (the explanation Plaintiff received when his request for a shower chair was denied), to mean that security concerns overrode giving Plaintiff that particular accommodation. Title II of the ADA requires only that Defendants make "reasonable modifications in policies, practices, or procedures" when necessary to avoid discrimination. 28 C.F.R. § 35.130(b)(7); *accord Phipps*, 681 F. Supp. 2d at 920. Thus not all requests for accommodations must be honored. Courts recognize that reasonableness concerns may be heightened in prisons given their security needs. *Phipps*, 681 F. Supp. 2d at 921 (collecting cases). Here, however, the record is too sparse for this Court to

18

determine at summary judgment that Plaintiff's requested accommodation—just a shower chair—was unreasonable. As in *Phipps*, 681 F. Supp. 2d at 922, there is no evidence that a safety evaluation was made before denying Plaintiff a shower chair. Defendants also have not shown that any such evaluation would have been reasonable. To the contrary, Defendants' initial safety concerns are difficult to reconcile with their ultimate decision to provide Plaintiff a shower chair in February 2013. DSOF ¶¶ 62-63; *cf. Phipps*, 681 F. Supp. 2d at 922. Even if the shower chair request was unreasonable, Plaintiff was denied other accommodations that may be reasonable, such as his request to be reassigned to a handicap accessible living unit. DSOF ¶ 41; PSOAF ¶ 7.

*Love* and *Phipps* also foreclose granting summary judgment based on Defendants' recent efforts to comply with the ADA. *See* DSOF ¶¶ 71-76, 78-79 (construction of the Residential Treatment Unit, creation of the ADA Compliance Officer position, implementation of new General Orders, etc.). These efforts, which post-date Plaintiff's stay at Cook County Jail, do not deny—and may even validate—that Plaintiff should have been received a shower chair, "grab bars," a housing reassignment or other reasonable accommodations during his incarceration.

For these reasons, Plaintiff may proceed to trial with his ADA and Rehabilitation Act claims.

## IV. Conclusion

Defendants' motion for summary judgment [49] is granted in part and denied in part. Plaintiff thus may not proceed against Sheriff Dart in his individual capacity on any of his claims. *See McKinnie v. Dart*, No. 14-9588, 2015 WL 1117297, at *5 (N.D. Ill. March 10, 2015) (Plaintiff acknowledged that he does not seek to impose individual liability against Sheriff Dart under the ADA and Rehabilitation Act). Plaintiff, however, may proceed to trial against Sheriff Dart, in his official capacity only, and Cook County. The next status hearing remains scheduled for October 1, 2015 at 9:45 a.m. in Courtroom 1725.

Dated: September 24, 2015

Entered:

_____
John Robert Blakey
United States District Judge